629 So.2d 545 (1993)
James MINGE, et al.
v.
B. Gerald WEEKS, et al.
No. 93-C-1639.
Court of Appeal of Louisiana, Fourth Circuit.
December 21, 1993.
Rehearing Denied January 14, 1994.
Leslie R. Leavoy, Jr., DeRidder, for relator, Alfred Ghoram.
Russ M. Herman, Maury A. Herman, Matthew P. Chenevert, Leonard A. Davis, Brian A. Cadwallader, Herman, Herman, Katz & Cotlar, New Orleans, for respondent, James Minge.
Before SCHOTT, C.J., and BARRY and CIACCIO, JJ.
BARRY, Judge.
A writ of certiorari was granted to review the trial court's denial of a motion for summary judgment which was filed by Alfred *546 Ghoram, intervenor in these consolidated suits. Intervenor is seeking a declaratory judgment declaring the provisions of an alleged contract between James Minge and Associates and B. Gerald Weeks as void and unenforceable because the contract violates the Rules of Professional Conduct for lawyers. After review of the record and the briefs of the parties, we reverse.

FACTS AND PROCEEDINGS BELOW
In January 1990, attorney B. Gerald Weeks entered into an employment agreement with Manard and Minge, a law partnership doing business as James Minge and Associates. Included in that contract were the following provisions:
In the event that this Agreement is terminated, and the Employee is discharged by the Employer or otherwise leaves the Employer's employ, the Employee agrees not to contact or solicit or otherwise seek or accept the employment of any of the Employer's clients, whether directly or indirectly, or otherwise to cause any client to discharge the Employer. In the event that the Employee nevertheless solicits or accepts employment from any of the Employer's clients, then the Employee hereby stipulates that the Employer shall be entitled to eighty percent (80%) of the net attorney fee generated by said client's file, case or business, in addition to the reimbursement of the Employer's out of pocket expenses as described in the following paragraphs.
* * * * * *
The Employee hereby acknowledges that he has no vested interest in any file assigned to him by the Employer, and that upon the termination of this Agreement the Employee shall not be entitled to any fees collected thereafter on any file or case pertaining to which the Employee might have performed legal services during the term of this Agreement.
In May 1991 Alfred Ghoram contacted Mr. Weeks regarding a recent job injury. Mr. Ghoram signed a contingency fee contract on May 23, 1991, stating that "I (Ghoram) ... hereby retain James H. Minge as my/our sole and exclusive agent and attorney...." Only Mr. Weeks was involved in handling Mr. Ghoram's case, and Mr. Ghoram never met Mr. Minge.
In February 1993 Mr. Weeks left Mr. Minge's firm, and in March a new firm was established by Mr. Weeks and two other former Minge associates. Mr. Ghoram formally discharged Mr. Minge and retained Mr. Weeks. Shortly thereafter, Mr. Minge sued Mr. Ghoram under the contingency contract for $2462.55 in costs and expenses advanced.[1]
Mr. Minge also sought injunctive relief against all three departing associates in a separate action, asserting that their solicitation of his clients breached the provisions of their employment contracts. The defendant-associates reconvened, also seeking injunctive relief, but the trial court found no imminent irreparable harm existed for any party.[2] Mr. Minge then filed another suit against the three former associates seeking damages for the alleged contract violations and other assorted torts. The latter two suits were consolidated by the trial court, since both arise out of the employment agreements between Mr. Minge's law firm and the former associates.
Mr. Ghoram filed a petition of intervention in the consolidated suits, asserting that because Mr. Weeks could not afford to continue as his attorney under the financial disincentives in the employment contract, enforcement of the agreement would deprive him of his right to counsel of his choice in his personal injury suit. Mr. Ghoram prayed for a declaratory judgment that the restrictive provisions of Mr. Weeks' contract with Manard and Minge, d/b/a Minge and Associates, were void and unenforceable as against public policy. Mr. Ghoram's subsequent motion *547 for summary judgment was denied, resulting in his writ application to this Court.[3]

DISCUSSION
Rule 5.6 of the Rules of Professional Conduct, effective January 1, 1987, provides in part that:
A lawyer shall not participate in offering or making:
(a) A partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement.
There are no published Louisiana cases interpreting Rule 5.6. However, cases from other jurisdictions which have adopted the Rules are informative since they were derived from the ABA Code of Professional Responsibility. Those cases establish that although worded in terms of the lawyer's right to practice, the underlying purpose of Rule 5.6 is to ensure the client's freedom to select counsel of his or her choice. Jacob v. Norris, McLaughlin & Marcus, 128 N.J. 10, 607 A.2d 142, 146 (1992). Since the Rules are designed "to serve the public interest in maximum access to lawyers and to preclude commercial arrangements that interfere with that goal," the "plain meaning (of Rule 5.6) indicates that any provision, whether direct or indirect, that operates so as to restrict a lawyer's post-termination practice will contravene the ethical rule." Id.
Although the financial disincentive provisions contained in the employment contract at issue here are not directly restrictive, they are of the type that violate the language and spirit of Rule 5.6:
By forcing lawyers to choose between compensation and continued service to their clients, financial-disincentive provisions may encourage lawyers to give up their clients, thereby interfering with the lawyer-client relationship and, more importantly, with clients' free choice of counsel. Those provisions thus cause indirectly the same objectionable restraints on the free practice of law as more direct restrictive covenants.... Because the client's freedom of choice is the paramount interest to be served by the RPC, a disincentive provision is as detrimental to the public interest as an outright prohibition. Jacob, 607 A.2d at 148-149.
The Minge firm, respondent in this writ, asserted in opposition to Mr. Ghoram's motion for summary judgment that material factual disputes remained for resolution. However, the unresolved issues specified in the opposition pertain to the defendant-associates, not to Mr. Ghoram or his claim. Further, the cases relied upon to uphold the employment contract, i.e., Lawrence v. Wynne, 598 So.2d 1293 (La.App. 4th Cir.), writ denied, 604 So.2d 969 (La.1992), and Scurto v. Siegrist, 598 So.2d 507 (La.App. 1st Cir.), writ denied, 600 So.2d 683 (La.1992), were decided under former DR 2-107 and are not relevant.
Thus, Mr. Ghoram is entitled as a matter of law to the relief sought in his intervention with respect to attorney fees. Because he entered into a contingency contract in his personal injury suit, the division of attorney fees shall be made in accordance with Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102, 114 (La.1979) (on rehearing). Mr. Weeks' employment contract with Manard and Minge, d/b/a Minge and Associates, is unenforceable as a matter of law to the extent it requires otherwise. Minge's rights to recover advanced costs (under the contingency fee contract) are not affected by this decision.
The respondent's motion to consolidate and motion to take judicial notice are denied.
REVERSED.
NOTES
[1] Mr. Weeks was also named and served as a defendant in that action, filed in 1st City Court; the present status of that case is unknown.
[2] The issue of injunctive relief is the subject of appeal 93-CA-1207 now pending before this Court.
[3] The trial court's denial of a similar motion by the defendant-associates is not challenged.