I,DENNIS R. BAGNERIS SR., Judge.
Plaintiffiappellant, John Fox (hereinafter “Plaintiff’), appeals the trial court’s judgment, which granted a summary judgment in favor of defendant/appellee, Frederick Heisler (hereinafter “Defendant”). For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
This appeal involves a fee dispute between two attorneys. On June 13, 2003, Plaintiff filed a Petition for Declaratory Judgment against Defendant to determine whether an oral agreement to divide attorney fees violates Rules 1.5(e) and Rule 5.6 of the Rules of Professional Conduct. Specifically, the Plaintiffs petition alleges, in pertinent part:
3.
Plaintiff represented Christopher Mann, Sr. and Christopher Mann Jr., in a claim for personal injuries which has now settled.
4.
The attorney fee on said settlement was one-third of the gross settlement.
I 2&-
Plaintiff was an attorney-employee of defendant during 1988 to 1990.
6.
When plaintiff left defendant’s employment, he entered into a verbal agreement whereby defendant was to *934 receive fifty percent of the attorney fee in the Mann case.
7.
Plaintiffs representation of the Manns began before his employment with defendant, continued during the period of employment, and ended well after the employment relationship terminated.
8.
Plaintiff performed all of the work in the Mann case.
9.
Defendant performed none of the work in the case, but did contribute some of the costs of litigation. Said costs were reimbursed upon settlement with one of the insurers.
10.
Plaintiff had a written attorney-client agreement with the Manns wherein he assumed responsibility for handling the aforementioned claim for damages.
11.
Defendant had no written attorney-client agreement with the Manns wherein he assumed responsibility for handling the aforementioned claim for damages.
12.
Plaintiff brings this action for declaratory judgment to determine the rights between the parties in the following respects: whether said agreement to divide the attorney fee violates Rules 1.5(e) and 5.6 of the Rules of Professional Conduct in accordance with the holdings in Bertucci v. McIntire, 693 So.2d 7 ([La.] 5 Cir.1997), and Minge v. Weeks, 629 So.2d 545 ([La.App.] 4 Cir.1993).
On July 16, 2003, Defendant filed a Motion for Summary Judgment, alleging that 50% of the $1,153,333.33 legal fees generated in the matter of Christopher Mann v. Brittany Place Associates, is due and payable to him. In [¡¡Defendant's memorandum in support of motion for Summary Judgment, he alleges that during the 1990 Labor Day weekend, Plaintiff took 211 case files which belonged to Heisler & Wysocki and as to which Heisler & Wy-socki had funded $108,940.54. Defendant alleges that among these files was the “lucrative but expensive Chris Mann case, ... which involved a young man paralyzed when he dove into a swimming pool and broke his neck.”[1] Thereafter, Defendant alleges that on October 3, 1990, within a month of Plaintiffs departure, he and Plaintiff entered into the following verbal contract: (i) for Plaintiff to provide Defendant with a list of cases which were taken, (ii) for Plaintiff to pay 30% of dead files by November 1 to Defendant, and (iii) for Plaintiff and Defendant to split all fees 50/50.
Further, Defendant attached, as exhibits to his memorandum in support of motion for Summary Judgment, evidence that since 1990, Plaintiff has remitted the agreed 50% fee in at least 74 cases, includ *935 ing two prior fees collected in the Chris Mann case as partial settlements. The exhibits reflect that the first Mann settlement occurred on June 5, 1996, wherein Plaintiff recovered a fee of $333,333,00. Defendant’s ledger reflects that a June 10, 1996 credit entry is shown in the amount of $185,331.56, which is made up of 50% of the fee |4($166,666.00) and $18,665.56 owed to Defendant in costs.[2] The second Mann partial settlement was reached in July, 2001. The exhibits reflect Plaintiffs settlement sheet showing that $49,390.83 fee as being undated and Defendant’s ledger showing that he received his agreed 50% on July 18, 2001. Further, the exhibits reflect that in 1994 and 1995, Plaintiff requested that Defendant advance funds totaling $12,381.51, a request Defendant granted.
On August 7, 2004, Plaintiff filed a Cross Motion for Summary Judgment. Specifically, the Cross Motion states as follows:
1.
Plaintiff represented Christopher Mann, Sr., on his own behalf and on behalf of his minor child, Christopher Mann, Jr., in a claim for personal injuries which recently resulted in a settlement with one insurer in the amount of $3,500,000.00.
2.
The attorney fee on said settlement was one-third of the gross settlement.
3.
Plaintiff was an attorney-employee of defendant during 1988 to 1990.
4.
In 1987, before entering defendant’s employment, plaintiff signed a contingency fee contract with Mr. Mann wherein he assumed responsibility for representation of the client.
5.
Defendant never had any written agreement with Mr. Mann wherein defendant assumed responsibility for representation of the client.

Jé-

When plaintiff left defendant’s employment, he entered into a verbal agreement whereby defendant was to receive fifty percent of the attorney fee in the Mann case.
7.
Said verbal agreement was never reduced to writing or recited in open court.
8.
Plaintiffs representation of the Manns began before his employment with defendant, continued during the period of employment, and ended well after the employment relationship terminated.
9.
Plaintiff performed all of the work in the Mann case.
10.
Defendant performed none of the work in the case, but did contribute some of the costs of litigation. Said costs were reimbursed upon settlement with one of the insurers.
*936 11.
The verbal agreement is unenforceable under the terms of Civil Code Art. 8071 because it was never reduced to writing or recited in open court as required by that statute.
12.
The verbal agreement is unenforceable under the terms of Rules 1.5(e) and 5.6 of the Rules of Professional Conduct.
Following oral argument on the motions, the trial court rendered the judgment at issue on September 5, 2003, granting Defendant’s Motion for Summary Judgment, and denying Plaintiffs Cross-Motion for Summary Judgment. In its reasons for judgment, the trial court states in pertinent part:
Fox [Plaintiff] orally agreed with Heis-ler [Defendant] that he would continue to work on this case, refund all outstanding expenses, and share all fees generated from the case 50/50. For thirteen years Fox [Plaintiff] honored this oral agreement. Heisler [Defendant] advanced litigation costs at Fox’s [Plaintiffs] request. Attorney’s fees were split 50/50 on two settlements regarding the Mann case. A judgment had been rendered in favor on plaintiff Chris Mann, generating a $1,153,333.00 fee. Fox [Plaintiff] currently desires to dishonor this ^agreement by refusing to pay to Heisler [Defendant] fifty percent of this $1,153,333.00 fee....
The court finds that due to the thirteen year duration of adherence to the agreement by John Fox [Plaintiff] and Frederick Heisler [Defendant], the fact that Fox [Plaintiff] allowed Heisler [Defendant] to advance litigation costs in anticipation of a 50/50 split of attorney’s fees, and the previous split of fees on two separate occasions regarding the Mann case, Fox [Plaintiff] should not now be allowed to deny the existence of the agreement with respect to the $1,153,333.00 fee.
On September 29, 2003, Defendant filed a Reconventional Demand.[3] Thereafter, the trial court granted Plaintiffs Motion and Order for Devolutive Appeal. Plaintiff now seeks review of the September 5, 2003 judgment of the trial court.
STANDARD OF REVIEW
Appellate courts review the grant or denial of a motion for summary judgment de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Independent Five Ins. Co. v. Sunbeam Corp., 99-2181, p. 7 (La.2/29/00), 755 So.2d 226, 230. A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). A fact is material when its existence or nonexistence may be essential to the plaintiffs cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is *937 no need for trial on that issue and summary judgment is appropriate. Id.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). Summary judgments are favored, and the summary judgment procedure shall be construed to accomplish those ends. Id. La. C.C.P. art. 966(C)(2) provides that where, as in the instant case, the party moving for summary judgment will not bear the burden of proof at trial, his burden does not require him to negate all essential elements of the adverse party’s claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that she will be able to satisfy her evidentiary burden of proof at trial, there is no genuine issue of material fact, and the movant is entitled to summary judgment as a matter of law.
DISCUSSION
We first note that this Court ordered the Plaintiff to show cause why the judgment was not “interlocutory in nature since a reconventional demand, which was filed on September 29, 2003, remained outstanding.” The Plaintiff submitted a brief arguing, “the reconventional demand was never appropriately filed, so that it was never ‘outstanding,’ and does not, in fact, remain outstanding.” As such, Plaintiff attached a certified copy of the January 5, 2004 judgment, which |sdismissed the reconventional demand for lack of subject matter.[4] Because the dismissal of the reconventional demand was neither appealed, nor was a timely writ filed, the judgment dismissing the reconventional demand is now final and no reconventional demand remains outstanding. Accordingly, we find the September 5, 2003 judgment is now a final, appealable judgment.
On appeal, Plaintiff briefed three assignments of error, arguing that the trial court erred in: (1) failing to find that the agreement is in violation of Rule 1.5(e) of the Louisiana Rules of Professional Conduct; (2)failing to find that the agreement is in violation of Rule 5.6 of the Louisiana Rules of Professional Conduct; and (3) failing to find that the agreement was a transaction and compromise in avoidance of litigation which is not enforceable under Civil Code Art. 3071.
The primary issue raised in Plaintiffs assignment of error is whether the oral agreement between Plaintiff and Defendant regarding the division of legal fees is in derogation of the Code of Professional Responsibility.
Rule 1.5(e) of the Louisiana Rules of Professional Conduct states as follows:
A division of fee between lawyers who are not in the same firm may be made only if:
(1) The division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibilities for the representation;
(2) The client is advised of and does not object to the participation of all the lawyers involved; and
(3) The total fee is reasonable.
Rule 5.6 of the Louisiana Rules of Professional Conduct states as follows:
A lawyer shall not participate in offering or making:
*938 |9(a) A partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or
(b)An agreement in which a restriction on the lawyer’s right to practice is part of the settlement of a controversy between private parties.
In the case sub judice, both parties agree that when Plaintiff left Defendant’s employment, he entered into an oral agreement whereby Defendant was to receive fifty percent of the attorney fee in the Mann case. Further, the parties agree that the attorney fee has now been paid in full, with two of the three settlement checks being split 50/50. Accordingly, this is neither a suit for recovery of attorney’s fees nor a suit over the terms of the settlement agreement. Rather, Plaintiff merely argues that the oral agreement to share in the fee fund is unenforceable and against public policy because the agreement does not comply with the Code of Professional Responsibility.
In Scurto v. Siegrist, the retained attorney had entered into an oral agreement with another attorney to divide the legal fee. 598 So.2d 507 (La.App. 1 Cir. 4/10/92), writ denied, 600 So.2d 683 (La.1992). The retained attorney who sought to recover his share of the contingency fee, Scurto, was obligated by the agreement to manage the client, as well as to advance costs. Scurto, 598 So.2d at 510. The First Circuit Court held that “the suit by an attorney to recover pursuant to that agreement is a suit to recover for breach of the agreement to share in the fund resulting from payment of the fee. It is not a suit for recovery of attorney’s fees.” Id. citing Duer and Taylor v. Blanchard, Walker, O’Quin and Roberts, 354 So.2d 192 (La.1978). Thus, the court in Scurto found that the attorneys were in a Duer situation, that is, two attorneys not of the same firm jointly representing a client. See Duer, 354 So.2d at 194-195. The First Circuit Court held that, because the | ^retained attorney had associated, employed, or procured the employment of the other attorney to assist him in handling a case involving a contingency fee, the agreement regarding the division of the contingency fee was a joint venture. Scurto, 598 So.2d at 510. Further, the First Circuit Court indicated that the Rules of Professional Conduct do not prohibit the enforcement of such an agreement and would not require the apportioning of the fee on a quantum meruit basis when the attorneys are in a Duer situation. Id. Accordingly, the agreement between the attorneys to divide the fee was held to be valid and enforceable.
We find the facts in this case similar to the facts in Scurto. Defendant in this case advanced costs to Plaintiff and he kept records concerning the case. Without Defendant’s involvement in the Mann case, Plaintiff might have gone bankrupt and could no longer represent Client. Further, its worth reiterating the fact that Plaintiff adhered to the oral contract he had with Defendant for thirteen years, and that the Plaintiff and Defendant had split fees on two separate occasions regarding the Mann case.
Additionally, while we agree with Plaintiff that the cases on which he relies are persuasive in establishing public policy may well be served by finding oral arguments unenforceable under certain conditions based on prospective uncertainties, the thirteen-year history of events which are factually cataloged in the record do not establish contravention of any public policy. Specifically, the client’s choice is clearly not limited by the agreement since *939 the client had already hired Plaintiff before Plaintiff began working for Defendant’s firm. As such, Plaintiff was already bound to work for client, and the fee-sharing agreement had no affect on the client’s choice of legal representation. Further, the parties do not dispute any terms of the contract, which militates against a finding that the oral Inagreement, as a transaction and compromise, should be in writing. Accordingly, under these circumstances, we hold that the oral contract was valid and should be enforced as agree upon.
For these reasons, we affirm the trial court’s judgment, which granted summary judgment in favor of Defendant, Frederick Heisler.
AFFIRMED.

. Attached to Defendant’s Motion for Summary Judgment was the following contract, which the hired associates agreed to in writing:
All files, including your own cases, will belong to Frederick P. Heisler and James A. Wysocki, jointly; in the event that you leave this office, suitable arrangements concerning fees, ledger balances and related matters would have to be worked out before any files could be removed from the office and the specific permission, in writing, of Frederick P. Heisler and James A. Wysocki must be obtained before any files are removed.

. In that instance, Plaintiff kept $186,507.38 for himself and an additional $70,000 for a ■ "litigation escrow.”

. The Reconventional Demand requested Plaintiff to disclose any and all settlements and/or judgments connected in any and all of the files that were removed from Defendant's firm in 1990, and requesting that Plaintiff turn over to Defendant any and all funds to which he is entitled to from said files.

. A Motion to Supplement the Record has been filed by Plaintiff to have this Judgment of January 5, 2003, and the Notice of Signing of same filed with this Court.